# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

| | |
|---|---|
| TANYA PHELPS, <br><br> Plaintiff, <br><br> v. <br><br> MULTICARE HEALTH SYSTEM, d/b/a TACOMA GENERAL HOSPITAL, <br><br> Defendant. | CASE NO. 3:15-cv-05120-RBL <br><br> ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

THIS MATTER comes before the Court on the Motion for Summary Judgment (Dkt. 54) of Defendant Multicare Health System (Multicare). The Court has considered the motion, Plaintiff Tanya Phelps' Response (Dkt. 70), Multicare's Reply (Dkt. 72), and the remainder of the file herein. Because Ms. Phelps' state law claims are preempted by §301 of the Labor Relations Management Act (LRMA) (*see* Dkt. 15), and she has not satisfied certain prerequisites to filing suit, Multicare's motion for summary judgment of dismissal should be granted.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

## BACKGROUND

This case began in Pierce County Superior Court, where Ms. Phelps, a nurse by training, filed suit against a former employer, Multicare, d/b/a Tacoma General Hospital. Dkt. 1. The Complaint centers on the allegation that Ms. Phelps was forced to resign due to serious disabilities, a result that followed Multicare's failure to accommodate her medical leave needs, as well as an onslaught of offensive comments by coworkers, including supervisors. *See generally*, Dkt. 1-1. The Complaint alleges state law claims for disability discrimination, hostile environment, disparate treatment, and retaliation in violation of the Washington Law Against Discrimination (WLAD), and a common law claim for "intentional infliction of emotional distress, outrage." Dkt. 1-1 at 10.

Raising federal question jurisdiction and invoking §301 of LMRA, Multicare timely removed the case under the theory that Ms. Phelps' claims fall under the terms of a collective bargaining agreement (CBA). Dkt. 1 at ¶¶4-7. 28 U.S.C. §1331. Ms. Phelps challenged Multicare's theory in a Motion to Remand. Dkt. 15. The Court denied the motion, finding that Ms. Phelps' state law claims are preempted by §301 of the LMRA. *Id.* at 3. *See Textile Workers v. Lincoln Mills,* 353 U.S. 448, 456 (1957) (federal question jurisdiction over CBA controversies). Considering Ms. Phelps' claims would require the Court to analyze and interpret the CBA that formed the basis of Ms. Phelps' employment. *Id.*

## DISCUSSION

Multicare argues that summary judgment of dismissal is warranted on two grounds: (1) Ms. Phelps' claims are preempted by §301 of the LMRA, and Ms. Phelps has not satisfied several prerequisites to filing suits governed by the CBA; and (2) Ms. Phelps' claims fail on the merits.

**A. Preemption under §301 of the LMRA and prerequisites to filing suit.**

According to Multicare, because Ms. Phelps' state law claims are preempted by §301 of the LMRA (*see* Dkt. 15), Ms. Phelps must meet certain prerequisites prior to bringing suit: (a) exhaust grievance/arbitration remedies; (b) file claims within six months; and (c) allege or to make a showing that the Union breached its duty of fair representation. Dkt. 54 at 15.

Ms. Phelps does not contest that she has failed to meet these three prerequisites. *See* Dkt. 70 at 20-23. Instead, Ms. Phelps argues that preemption is not warranted in the first place, because her claims are "factually and legally" independent of the CBA and do not require its interpretation, and there is an "overwhelming" public policy interest in enforcement of state discrimination laws and no undue interference with the federal regulatory scheme. *Id*. citing to *Hume v. Am. Disposal Co.*, 124 Wn.2d 656 (1994). In essence, Ms. Phelps requests the Court to reconsider its preemption finding. Before considering the prerequisites raised by Multicare, the Court will revisit its preemption finding with additional depth.

    1. <u>Preemption under §301 of the LMRA.</u>

Whether a state cause of action is preempted by §301 of the LMRA depends on whether resolving the state law claims requires interpreting the CBA. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06 (1988); *Jimeno v. Mobil Oil Corp.,* 66 F.3d 1514, 1522–23 (9th Cir.1995). To assess whether the claims are independent of the CBA, the Ninth Circuit employs a three-part test that considers:

    (a) whether the CBA contains provisions that govern the actions giving rise to a state claim, and if so,

    (b) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the CBA, and

    (c) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract.

*Miller v. AT & T Network Sys.,* 850 F.2d 543, 548 (9th Cir.1988). State law claims are preempted when the answer to the first question is "yes," and the answer to either the second or third question is "no." *Id*. *See, e.g., Andreasen v. Supervalu, Inc.*, No. 12-CV-05914-RBL, 2013 WL 2149714, at *3–4 (W.D. Wash. May 16, 2013).

As supplemental analysis to its original finding (*see* Dkt. 15), the Court will apply the *Miller* three-part test to Ms. Phelps' disability discrimination claim. Dkt. 1-1 at ¶5(a).

### a. *Does the CBA govern the actions giving rise to a state claim?*

Yes. Under the terms of the CBA, discrimination is prohibited except where it constitutes a "bona fide occupational qualification," and airing discrimination grievances triggers obligations by Multicare. Dkt. 2-1 at ¶¶5.6, 5.7, 5.8. Grievances are subject to a specific procedure, and Multicare may only discipline or discharge for "just cause." *Id*. ¶¶5.6, 13.1-13.4. Extended Illness/Injury Time (EIT), Paid Time Off (PTO), and Health Leave may be accrued and utilized in certain ways, and the circumstances are prescribed for employees returning to work after extended absence. *Id*. at ¶¶9.4, 10.5, 10.6, 10.8. These and other CBA terms govern the actions giving rise to the disability discrimination claim, because, in Ms. Phelps' own words, "she was forced to resign due to her serious disabilities," Dkt. 70 at 1, whereas Multicare insists that its actions, including actions taken to replace Ms. Phelps, were legitimate under the CBA terms. The CBA defines the procedure and bases for Multicare to take adverse employment actions, so the reasonableness of Multicare's actions—and thus the disability discrimination claim itself—turns on interpreting the CBA. The Court must answer the first *Miller* question in the affirmative.

*b. Has the State articulated a sufficiently clear standard that the State claims may be evaluated without considering the overlapping provisions of the CBA?*

No. Under the WLAD, employers are prohibited from "discharg[ing] or bar[ring] any person from employment" on the basis of a disability. RCW 49.60.180(2). "Disability" is defined as "the presence of any sensory, mental, or physical disability." WAC 162-26-040(2). To establish a prima facie case of disability discrimination, the employee must show: (1) a disability, (2) the ability to perform "essential functions" of the job, and (3) the employer's failure to make reasonable accommodations. *Dedman v. Wash. Personnel Appeals Board*, 98 Wn.App. 471, 478 (Div. II, 1999).

Although the State provisions provide sufficiently clear standards to evaluate the disability discrimination claim, evaluation cannot be done without consideration of overlapping CBA terms, particularly as to the third element, failure to make reasonable accommodations. According to Ms. Phelps, Multicare should have been more accommodating to Ms. Phelps for a host of ongoing health problems, for example, where Multicare advised Ms. Phelps that proceeding with a scheduled medical operation would result in her termination. To resolve whether Multicare acted reasonably in its accommodations—or lack thereof—the trier of fact must ultimately consider the state law through the lens of the CBA terms. Because of the significant overlap, the Court must answer the second *Miller* question in the negative.

*c. Has the State of Washington shown an intent not to allow its prohibition to be altered or removed by private contract?*

Because the answers are "yes" and "no" to the first and second questions respectively, the Court need not reach the third question, and the WLAD disability discrimination claim is preempted.

2. <u>Prerequisites to filing suit.</u>

Having again addressed the underlying preemption challenge raised by Ms. Phelps, the Court turns to the prerequisites raised by Multicare. The primary issue is whether Ms. Phelps has satisfied certain prerequisites to filing suit, because if not, her claims are barred. She has not.

First, because Ms. Phelps' claims are intertwined with interpreting the CBA, she must exhaust all grievance remedies prior to filing suit. "[I]t is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement." *Vaca v. Sipes*, 386 U.S. 171, 184-85 (1967); *Herman v. United Bhd. of Carpenters & Joiners of America, Local Union No. 971*, 60 F.3d 1375, 1379 (9th Cir.1995). "[T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government." *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581 (1960). Ms. Phelps does not argue that she has even attempted to exhaust her remedies, nor does the Court find any basis in the record to support such a finding. There is no showing that an exception to the general rule should apply. *Vaca*, 386 U.S. 185-87. *See also*, *e.g., Sidhu v. Flecto Co., Inc.*, 279 F.3d 896, 898-99 (9th Cir.2002) (employer estopped from relying on defense of failure to exhaust where employer repudiated CBA grievance procedures designed to resolve the grievance).

Second, because Ms. Phelps' claims fall under §301 of the LMRA, they are subject to a six month statute of limitations. 29 U.S.C. § 160(b). "Congress established a limitations period attuned to what it viewed as the proper balance between the national interests in stable bargaining relationships and finality of private settlements[.]" *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 170 (1983). Ms. Phelps has made no showing that she filed her claim within six months of the incident, nor has she provided any basis for equitable tolling.

1       Third, employees may be entitled to a claim for damages independent from the terms of a CBA where a union breaches its duty of fair representation. *Scott v. Machinists Auto. Trades Dist. Lodge No. 190 of N. California*, 827 F.2d 589, 592 (9th Cir. 1987), citing to *Vaca*, 386 U.S. at 181-83. Applied here, the Complaint does not allege—nor does Ms. Phelps argue—that the Union breached its duty of fair representation.

      Because Ms. Phelps' claims are preempted by §301 of the LMRA, to proceed with her claim, Ms. Phelps must satisfy certain prerequisites, which she has failed to do. Therefore, summary judgment of dismissal in favor Multicare is warranted. The Court makes no judgment as to whether Ms. Phelps' claims could proceed administratively under the terms of the CBA; the case should be dismissed without prejudice.

**B. <u>The merits.</u>**

      Multicare argues in the alternative that there are no material issues of fact for any claim. Dkt. 54 at 15-25. Because dismissal is warranted on other grounds, the Court declines to reach the merits.

      Therefore, it is hereby **ORDERED**:

      Defendant Multicare Health System's Motion for Summary Judgment (Dkt. 54) is GRANTED. The case is DISMISSED WITHOUT PREJUDICE.

      It is so ordered.

      The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

      Dated this 6th day of July, 2017.

                                                               Ronald B. Leighton
                                                               United States District Judge